UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

PACIFIC EMPLOYERS INSURANCE CO.,

    Plaintiff,

v.        No. 3:11cv924 (MRK)

TRAVELERS CASUALTY & SURETY CO.,
STANDARD FIRE INSURANCE CO.,
EVANSTON INSURANCE CO., and
ST. FRANCIS CARE, INC.,

    Defendants.

## MEMORANDUM OF DECISION

Defendant Travelers Casualty & Surety Co. ("Travelers")[1] has moved for reconsideration of the Court's previous Memorandum of Decision [doc. # 226] in which it found that Travelers had a duty under its General Liability coverage to defend St. Francis Hospital from suits brought by patients claiming to have been sexually abused by Dr. George Reardon between 1981 and 1984. A description of the underlying Reardon litigation as well as the relationships between the various parties in this case can be found in the Court's previous opinion.

In keeping with Local Rule 7(c)'s directive to "set[] forth concisely the matters or controlling decisions which counsel believes the Court overlooked in the initial decision," D. Conn. L. Civ. R. 7(c), Travelers has argued that the Court failed to account for the so-called Special Endorsement No. 1 that was included in the policies Travelers issued to St. Francis during the years in question. Travelers is correct. The Court's previous opinion—like Travelers'

---

[1] Following the parties' practice, the Court refers to Standard Fire Insurance Co. and Travelers Casualty and Surety Co., the successors-in-interest to Aetna Casualty and Surety Co. (which issued St. Francis its policies), collectively as "Travelers."

summary judgment brief [doc. # 129-1] and its Rule 56(a)(1) Statement of Facts [doc. # 129-2]—did not discuss Special Endorsement No. 1. For this reason, Travelers' Motion for Reconsideration [docs. # 231, 234] is GRANTED. *See Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) ("[R]econsideration will generally be denied unless the moving party can point to . . . data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.").

The issues raised in this case are difficult ones, well worth further thought. As before, they have been argued with clarity and courtesy by counsel on all sides. Having dwelled again on the language of Travelers' policies in general, and on its Special Endorsement in particular, the Court holds fast to its original holding: that the presence of claims in the underlying litigation that may implicate Travelers' General Liability (GL) coverage, but not its Hospital Professional Liability (HPL) coverage, means that Travelers has a duty to defend under the former. However, the Court now finds it necessary to reach an additional question: whether Travelers also has a duty to defend the Hospital under its policy's HPL coverage part. Answering yes to that question, the Court, as described below, now asks the parties to submit further briefing on the question of how defense costs should be allocated, given Travelers' dual duties to defend.

## I.

Though interested readers are again directed to the Court's previous Memorandum of Decision [doc. # 226] for background, the Court will repeat the most crucial policy provisions and legal principles here.

This suit concerns two duties which are implicated by the Reardon litigation: the duty to defend and the duty to indemnify. The Connecticut Supreme Court has made clear that

the duty to defend is triggered whenever a complaint alleges facts that *potentially* could fall within the scope of coverage, whereas the duty to indemnify arises only if the evidence adduced at trial establishes that the conduct *actually* was covered by the policy. Because the duty to defend is significantly broader than the duty to indemnify, where there is no duty to defend, there is no duty to indemnify.

*DaCruz v. State Farm Fire and Cas. Co.*, 268 Conn. 675, 688 (2004) (quotation marks omitted).

The disagreement presently under consideration centers on Travelers' duty to defend St. Francis. The question is whether this duty arises under Travelers' GL coverage, as PEIC and St. Francis claim, or solely under its HPL coverage, as Travelers would have it. This, in turn, depends on whether the underlying complaints allege facts that could potentially fall within the scope of GL coverage but outside of its HPL coverage, thus giving rise to a duty to defend under the former.

Travelers' policies[2] from the time period in question provide the following description of the HPL coverage offered:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to any person arising out of the rendering of or failure to render, during the policy period, the following professional services:
> (a) medical, surgical, dental or nursing treatment to such person or the person inflicting the injury including the furnishing of food or beverages in connection therewith,
> (b) furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances . . . ,
> (c) handling of or performing post-mortem examinations on human bodies, or
> (d) service by any person as a member of a formal accreditation or similar professional board or committee of the named insured, or as a person charged with the duty of executing directives of any such board or committee.

Aff. of Maria T. Erkfitz [doc. # 130] Exs. A, C, and D.

Travelers' duty to defend is discussed in a paragraph appearing later on the same page:

---

[2] As the Court explained in its previous opinion, the 1981 policy is worded somewhat differently than the 1980, 1982, and 1983 policies. None of the parties has made an issue of those differences, however, so the Court ignores them here.

3

> [T]he company shall have the right and duty to defend any suit against the insured seeking such damages, even if any of the allegations of the suit are groundless, false or fraudulent . . . , but the company shall not be obligated to . . . defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

*Id.* A second paragraph on the HPL coverage form has also played an crucial role in this litigation. This is the so-called "non-concurrency provision" which governs the interaction between Travelers' HPL and GL[3] coverage parts:

> **Limitation of Coverage Under Any Other Liability.** Except as stated in this Part, the policy does not apply to injury arising out of the rendering of or failure to render the professional services described in paragraph 1 above.

*Id.* As the Court summarized the interaction in its previous opinion: "HPL precludes GL. If an injury arises out of the rendering of the professional services listed on the HPL form, that injury falls solely within Travelers' HPL coverage and does not give rise to GL coverage." Mem. of Dec. [doc. # 226] at 11-12.

Ultimately, however, this did not settle the issue in dispute, for as the Court found, there are potentially three kinds of claims in the underlying litigation: those that implicate only HPL; those that could fall under either HPL or GL, but which are covered by HPL because of the non-concurrency provision; and those that potentially fall solely within GL coverage. The Court concluded that because there are allegations in the underlying complaint that fall "*even possibly*" within the [GL] coverage along, "then the insurance company must defend the insured" under that coverage. *DaCruz*, 268 Conn. at 688.

---

[3] Travelers' GL coverage provides indemnity to St. Francis for "damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence." Further, Travelers "shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, . . . but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted . . . ." *Id.*

## II.

Seeking reconsideration of the Court's previous decision, Travelers has posed two questions: (1) Did the underlying suits trigger the HPL defense coverage; and (2) If so, how did the policies "require defense costs to be allocated for suits that potentially fell within both the HPL and GL Coverage Parts"? Mem. of Law [doc. # 235] at 2.

The first of these questions was not squarely presented by the parties' motions and cross-motions for summary judgment. Those focused on Count III of PEIC's Amended Complaint [doc. # 8], which asked for a declaration concerning Travelers' duty to defend under *GL* coverage. Thus, the Court has not previously discussed or determined Travelers' duty to defend under *HPL*.

This is not a hard question, however. It is clear that allegations in the underlying complaints "even possibly" implicate the HPL coverage part. Thus, the Court declares that Travelers has a duty to defend St. Francis in the Reardon litigation under its HPL coverage.

Travelers' second question is the difficult one. For while the Court agrees with Travelers that any particular injury can implicate only one of the coverage parts—since the non-concurrency clause swallows "mixed claims" into HPL—the Court has not settled the question of how the policies treat "mixed suits": those in which some allegations fall potentially under HPL and others potentially fall under GL alone.

To answer this, Travelers directs the Court's attention both to the non-concurrency provision and to the page in its policy referred to as Special Endorsement No. 1. It reads as follows:

SPECIAL – 1
Worldwide Malpractice

It is agreed that such insurance as is afforded by the Hospital Professional Liability Endorsement shall apply to claims which arise out of activities of any insured anywhere in the world, provided such claim is brought within the United States of America, its territories and possessions, subject to the following conditions:

A. The insured shall undertake the investigation, settlement, and defense of such claims and suits and keep the Company advised of all such proceedings and actions, and
B. The Company's obligation under the policy shall be limited to reimbursement of the insured:
    1. For the amount of damages for liability imposed upon him by law, for which there is coverage under the Hospital Professional Liability Endorsement, and
    2. For all reasonable expense incurred in connection with the investigation, settlement, or defense of such claims or suits and the Company's reimbursement obligation for the settlement of all damages imposed on and expenses incurred by the insured shall be limited to the amount stated in the policy as the applicable limit of the Company's Liability for damages that the Company may, at its discretion, participate, in, in the defense or settlement of such claim or suit.

Aff. of Maria T. Erkfitz [doc. # 130] Exs. A, C, and D [*sic*]. Travelers claims that the Special Endorsement "defines Travelers' HPL defense obligations." Travelers' Mem. of Law [doc. # 235] at 8. On its reading, "Special Endorsement No. 1 limits Travelers' defense obligations under 'this policy' (including the HPL and GL Coverage Parts) for suits that fall at least partially within the HPL Coverage Part to reimbursement of defense costs, within and as part of the policy's applicable HPL limits." *Id.* at 8-9. In other words, a duty to defend under HPL precludes any duty to defend under GL.

The Court remains unconvinced. For one thing, Travelers' reading runs up against the fact that Special Endorsement No. 1, specifically Section B.2, is written in gibberish. Were there a

period after "Liability" in B.2, the provision would be comprehensible: the Company would be obliged to reimburse the insured for reasonable defense expenses up to the applicable policy limit. However, in place of a period, the Endorsement goes on to speak of "damages that the Company may, at its discretion, participate, in, in the defense or settlement of such claim or suit." The Court has no idea what it would mean for the Company to participate in damages, and not even Travelers itself has claimed that it may exercise *discretion* over whether to pay for the defense or settlement of claims covered by its policies. The repeated ", in, in" is more mysterious still. Suffice it to say that the Connecticut Supreme Court must not have encountered Special Endorsement No. 1 when it observed, in reference to insurance contracts, that "parties ordinarily do not insert meaningless provisions in their agreements." *R.T. Vanderbilt Co. v. Cont'l Cas. Co.*, 273 Conn. 448, 468 (2005).

At oral argument, the parties disputed whether the Court should apply the principle that ambiguity in an insurance contract is to be interpreted in favor of the insured. *See, e.g., Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co.*, 274 Conn. 457, 463 (2005). However, when a provision is incomprehensible rather than simply vague, the more applicable interpretive principle is to give operative effect to every provision of an insurance policy that is susceptible to a reasonable construction. *See R.T. Vanderbilt*, 273 Conn. at 468. Provisions which are meaningless—despite having been negotiated and accepted by two sophisticated parties, as here—must necessarily be ignored. Rather than drawing inferences for any party based on phrases that are unparsable, the Court will simply give operative effect to as much of the policy language as it can.

Putting aside the words after "Company's Liability" in B.2, the Special Endorsement seems to make two important revisions to the policy's other provisions: first, it clarifies that the

HPL coverage applies worldwide; and, second, it gives St. Francis the right to conduct its own defense against claims falling under the HPL coverage. Neither of these revisions affects the matters currently before the Court.

What Travelers finds relevant is the language limiting its obligation "under the policy"—which Travelers reads to mean its total obligation to St. Francis, both HPL *and* GL—to "the amount stated in the policy as the applicable limit of the Company's Liability for damages." Travelers claims that this

> unambiguously restates the non-concurrency policy structure: for suits that fall within the HPL coverage part, Travelers' obligations for defense (and indemnity) costs under "the policy" (meaning, of course, the entire policy including all other coverage parts) are limited to the reimbursement of defense (and indemnity) costs, subject to and within the HPL limits.

Travelers' Reply Br. [doc. # 257] at 6.

This is a plausible reading. However, it suffers from two flaws—or at least admits of two ambiguities, in which case a tie goes to St. Francis under the principle already mentioned. *See Hartford Cas. Ins.*, 274 Conn. at 463. First, B.2 does not subject defense reimbursement expenses to HPL limits. It subjects it to "the amount stated in the policy as the *applicable* limit of the Company's Liability." It begs the question currently at issue to say that the *applicable* limit is the *HPL* limit. Second, while Travelers is quite right to claim that "suits that fall with the HPL coverage part" would be subject to HPL coverage limits, it again begs the question to assume that the suits in the underlying litigation are, in fact, suits that fall within the HPL coverage part. Suits that consist of HPL claims or mixed *claims* would clearly fall under the HPL coverage and coverage limits. But *suits* that are, or might be, "mixed" are not clearly governed by the Special Endorsement. On this, the Special Endorsement does nothing beyond what the non-concurrency clause did to explain how mixed suits, as opposed to mixed claims, should be treated.

### III.

The Court is thus returned, yet again, to the question that bedeviled it previously: how to deal with "mixed suits" in which there are allegations that "even possibly" implicate HPL coverage and others that possibly implicate GL coverage.

Travelers argues, again, that "[i]f a suit triggers an HPL defense obligation, the [non-concurrency clause] specifically states that there *cannot* be concurrent GL defense coverage." Mem. of Law [doc. # 235] at 8. Unfortunately for Travelers, the NCC says no such thing. To repeat policy language already quoted, the non-concurrency clause states: "Except as stated in this Part, the policy does not apply to injury arising out of the rendering of or failure to render the professional services described in paragraph 1 above." In other words, if there is an HPL-covered injury, there is no GL-covered injury.

The duty to defend, however, does not depend on what kinds of covered injury there *are*; instead, the duty to defend is triggered based on what kinds of covered injuries there might *even possibly* be. Travelers' duty to defend has to be decided on the basis of the allegations in the complaint, at which point the only thing that can be determined is whether an HPL-covered injury is possible.

As Travelers repeatedly notes, the Court previously found that if an injury is covered under HPL, this implies that the injury is not covered under GL. But as a logical matter, it does not follow that an injury *possibly* covered under HPL implies that the injury is not also *possibly* covered under GL. (Parents who announce "It's a girl!" thereby imply that "It's not a boy!" But it in no way follows that, during pregnancy, the possibility of having a girl precludes the possibility of having a boy.) Thus, the Court's maxim "HPL precludes GL" cannot be extended to mean "the possibility of HPL precludes the possibility of GL." Since it is the *possibility* of indemnification

9

liability that triggers an insurer's defense liability, nothing in the language of the non-concurrency clause prevents duties to defend from arising under both HPL *and* GL.

Were it otherwise, a case in which HPL coverage was possibly triggered, but in which indemnification ultimately fell under GL coverage would be a case in which Travelers had a GL duty to indemnify without even having had a duty to defend under GL. *See* Mem. of Dec. [doc. # 226] at 12. This flies in the face of the well-established principle that, where a duty to defend is contractually promised, the duty to defend must be broader than the duty to indemnify. *DaCruz*, 268 Conn. 675. Travelers now argues that its policies somehow contract around this default rule. But this is not what Travelers' own counsel said during oral argument in February, when he twice made the claim that "if there is no duty to defend, by definition, there's no duty to indemnify." Tr. [doc. # 250] Ex. A at 15; *see also id.* at 48 ("There's no duty to defend and, therefore, actually, if there's no duty to defend, there's no duty to indemnify.").[4] Travelers may now have reconsidered its position, but it has shown no unambiguous policy provision that requires the Court to do so.

Like Travelers, the Court reads the non-concurrency provision and the Special Endorsement to dictate that a claim must ultimately fall on one side or the other of the HPL/GL divide. But these do not clarify what to do when a case contains claims that still might possibly fall on either side. There, the dual possibilities of coverage trigger dual duties to defend.

### IV.

There is an unfairness lurking in this outcome, however, which the Court wishes to avoid. It is an inequity which the Court did not have occasion to address in its earlier decision, since

---

[4] It goes without saying that the statement "No duty to defend implies no duty to indemnify" is logically equivalent to the statement "A duty to indemnify implies a duty to defend."

that opinion did not make clear that Travelers had a duty to defend under HPL in addition to its duty under GL coverage. The problem with this omission is that it may have produced the impression that defense expenses which Travelers has or will pay should be counted solely towards Travelers' GL liability limits. But this is not the case, since Travelers' duty to defend arises under *both* its GL *and* HPL coverage parts.

The lurking unfairness is this: if the money Travelers pays towards St. Francis's defense were to be counted solely towards the GL coverage limit, the full HPL coverage amount would still be there for the taking should a duty to indemnify under HPL eventually arise. Travelers would have gotten no "credit" under HPL for the money it spent on St. Francis's defense, despite its clear HPL duty to defend.

As the Court had not previously declared that Travelers has a duty to defend under both its HPL and GL coverage parts, the parties have not squarely addressed the question of how defense costs should be treated under these dual duties. For that reason, the Court orders the parties to submit simultaneous briefs on this question no later than **August 24, 2012**. Simultaneous response briefs shall be filed on **September 7, 2012**. The parties are asked to address the question: How should the Court allocate defense costs arising from mixed cases in which Travelers has both HPL and GL duties to defend?

IT IS SO ORDERED.

/S/

Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: August 3, 2012.**