UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PACIFIC EMPLOYERS INSURANCE CO.,<br>    Plaintiff,<br><br>    v.<br><br>TRAVELERS CASUALTY AND SURETY CO., as successor-in-interest to AETNA CASUALTY AND SURETY CO.; STANDARD FIRE INSURANCE CO.; EVANSTON INSURANCE CO.; and ST. FRANCIS CARE, INC., d/b/a SAINT FRANCIS HOSPITAL AND MEDICAL CENTER,<br>    Defendants. | No. 3:11-cv-924 (SRU) |

# RULING AND ORDER

This case comes before me in a very unusual procedural posture. It is a declaratory-judgment action concerning the scope of several insurance policies purchased by a hospital, brought against the hospital and its primary insurance coverage providers by the hospital's excess coverage provider. It initially came before the late U.S. District Judge Mark R. Kravitz, and on April 19, 2012, he issued a Memorandum of Decision (doc. # 226) in which he granted a motion for partial summary judgment and denied two cross-motions for summary judgment. On August 3, 2012, he issued another Memorandum of Decision (doc. # 264), in which he granted a motion for reconsideration, analyzed the central issue raised in that motion, and "[held] fast to [his] original holding" (*id.* at 2). In that second ruling, he also ordered briefing on a question raised in the motion for reconsideration but seemingly not anticipated by the complaint, and it is not clear whether he intended to rule on the question in the form of a supplement to his earlier summary judgment ruling, or as an aid to settlement or trial in the manner of a ruling on a motion

*in limine*, or if he had some other motivation to order briefing. Whatever Judge Kravitz's intention, the parties filed the ordered briefs, and I heard oral argument on them. The parties raised two other disputed issues, and at the oral argument I granted them leave to file additional briefs.

Then the parties awaited a ruling, though what kind of ruling was not exactly clear. There was no pending motion—only Judge Kravitz's order to brief an issue, the resulting briefs, the supplemental briefs that arose from oral argument, and uncertainty about what Judge Kravitz intended following the briefing. I requested that the parties file some sort of motion if they wanted a ruling, and pursuant to that request they made a filing styled as a "Joint Motion by All Parties" (doc. # 317), in which they summarize this procedural history—attaching Judge Kravitz's two decisions and the transcript of oral argument—and "jointly request that the Court decide the issue posed by" Judge Kravitz in his second ruling (*id.* at 4). That joint request is curious, because the previous sentence says that the parties submit the Joint Motion "without prejudice to [their] respective positions as to whether and, if so, how" I should answer the question (*id.* at 3). The implication of the "whether and, if so" is that at least some of the parties do not think I should answer it at all; and indeed, the plaintiff's initial briefing on the question states plainly that "it is not an issue on which [the] complaint seeks a declaration." PEIC'S Supplemental Mem. Allocating Defense Costs 3 (doc. # 307 at 7).[1] I have examined the complaint (doc. # 8) and I agree with the plaintiff that it does not call for a declaration on the question. Moreover, because no resolution to the question is necessary to reach any of the four issues on which the complaint does seek declarations—most of which were resolved by Judge

---

[1] One of the defendants, in its briefing, also described the issue as having been "raised *sua sponte* by the Court" and not previously pleaded. Hospital's Mem. Resp. to Aug. 3, 2012 Order 8 (doc. # 268 at 8). In fact another defendant first raised it in the motion for reconsideration.

Kravitz's rulings either expressly or by implication—I conclude that it would be improper for me to issue an opinion on it as this case is pleaded. The joint motion by all parties is therefore denied to the extent that it seeks a ruling on that question. To the extent that it merely seeks some ruling "as a means to move this case forward" (doc. # 317 at 3) after the seemingly open-ended way it was left in the wake of Judge Kravitz's order for further briefing, it is granted in the form of the following decision.

I have examined the four requests in the complaint's Demand for Relief (doc. # 8 at 25–26) and Judge Kravitz's two rulings, and, as described more fully below, I conclude that giving full effect to Judge Kravitz's rulings clearly resolves the fourth request and nearly resolves the first two, or resolves them by implication. Answering the two questions raised in briefs and oral argument after Judge Kravitz's second ruling will clarify the resolution of the first two requests and will resolve the third, thereby disposing of this case. My ruling on those questions, decided from the record on summary judgment and as briefed by the parties on their cross-motions for summary judgment and in the briefing and argument that followed Judge Kravitz's second ruling, is as follows.

## I.  Background and Procedural History

This case arises out of the many claims brought in Connecticut state courts against St. Francis Hospital (the "Hospital") by victims of the late George Reardon. Reardon was an endocrinologist at the Hospital and is said to have sexually abused many children who were his patients over a period of several decades. The Hospital's insurers disagree about the scope of their respective policies and which of them are implicated by that litigation, and this declaratory-judgment action was filed to resolve the issue.

In the relevant period of January 1981 to October 1985, the Hospital carried excess blanket catastrophe liability coverage from Pacific Employers Insurance Co. ("PEIC"), which supplemented General Liability ("GL") and Hospital Professional Liability ("HPL") coverage from Travelers (January 1981 to October 1984) and Evanston (October 1984 to October 1985). The respective scope of each policy, and the associated duties to indemnify and to defend, are disputed in this litigation.

Travelers' GL coverage part provides indemnity to St. Francis for "damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence and [Travelers] shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage . . . ." Aff. of Maria T. Erkfitz (doc. # 130) Exs. A, C, and D. "Occurrence" is defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." *Id.*

Travelers' HPL coverage part provides that[2]:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to any person arising out of the rendering of or failure to render, during the policy period, the following professional services:
>
> > (a) medical, surgical, dental or nursing treatment[3] to such person or the person inflicting the injury including the furnishing of food or beverages in connection therewith,
> >
> > (b) furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances . . . ,

---

[2] The 1981 policy is worded somewhat differently than the 1980, 1982 and 1983 policies. I do not believe the differences are material, however, and none of the parties has argued otherwise, so I follow Judge Kravitz's lead in treating them collectively.

[3] Instead of "medical treatment," the 1981 HPL policy refers to "medical incident[s]," defined in relevant part as "any act or omission in the furnishing of professional heath care services." Aff. of Maria T. Erkfitz (doc. # 130) Ex. B.

4

> (c) handling of or performing post-mortem examinations on human bodies, or
>
> (d) service by any person as a member of a formal accreditation or similar professional board or committee of the named insured, or as a person charged with the duty of executing directives of any such board or committee.[4]

*Id.* In addition to that duty to indemnify, Travelers' HPL coverage also creates a duty to defend:

> the company shall have the right and duty to defend any suit against the insured seeking such damages, even if any of the allegations of the suit are groundless, false or fraudulent . . . , but the company shall not be obligated to . . . defend any suit after the applicable limit of the company's liability has been exhausted.

*Id*.

Another paragraph of the HPL policy part contains what Travelers calls (and what, in earlier rulings in this case, Judge Kravitz called) a "non-concurrency provision":

> **Limitation of Coverage Under Any Other Liability.** Except as stated in this Part, the policy does not apply to injury arising out of the rendering of or failure to render the professional services described in paragraph 1 above.

*Id*. at ¶ V.C.[5] That provision ensures that the HPL and GL coverages are mutually exclusive: if an injury falls within Travelers' HPL coverage, then Travelers' GL coverage does not apply. Or as Judge Kravitz put it, "HPL precludes GL" (doc. # 226 at 11).

In sum, the Travelers policies provide HPL coverage and GL coverage, and duties both to defend and to indemnify under each; any "mixed" HPL/GL claim ultimately falls under the HPL coverage. Because of the latter provision, the parties disputed whether such "mixed" claims could trigger the GL duty to defend, and in his ruling on cross-motions for summary judgment

---

[4] The 1981 HPL provisions refers instead to "service by any person as a member of a formal accreditation, standards review or similar professional board or committee of the named insured." *Id.*

[5] The 1981 HPL policy language is somewhat different: "**Limitation of Coverage Under Any Other Liability Insurance.** Except as stated in this Part, this policy does not apply to injury caused by any medical incident." *Id.*

5

(doc. # 226), Judge Kravitz held that they can. The duty to defend, under Connecticut law, "is considerably broader than the duty to indemnify." *DeCruz v. State Farm Fire and Cas. Co.*, 268 Conn. 675, 687 (2004). If a complaint raises mixed claims but results in a judgment that only implicates GL coverage, then the fact that the (narrower) GL duty to indemnify has been triggered necessarily means that the (broader) GL duty to defend has also been triggered. Thus, Judge Kravitz ruled, if there are claims *ex ante* that "even possibly" implicate GL coverage but not HPL coverage, then there arises a GL duty to defend—and only if the judgment *ex post* includes liability for a claim (or claims) that implicates both GL and HPL coverage does the non-concurrency provision dictate that indemnification for any such mixed claim falls exclusively under the HPL coverage. Judge Kravitz ruled, moreover, that in this case, the underlying litigation *does* raise claims that "even possibly" implicate GL coverage alone, and that Travelers therefore has a duty under its GL coverage to defend the Hospital against those claims in the underlying litigation.

   Travelers moved for reconsideration of Judge Kravitz's ruling, directing his attention to Special Endorsement #1, which it argued limited its defense obligations for suits that fall at least partially within HPL coverage to reimbursement of defense costs within and as part of the policy's applicable HPL limits. Judge Kravitz granted the motion for reconsideration, because he had not considered the Special Endorsement, but it did not lead him to undo his earlier ruling. He noted that, under the Special Endorsement, "Travelers is quite right to claim that 'suits that fall within the HPL coverage part' would be subject to HPL coverage limits, [but] it . . . begs the question to assume that the suits in the underlying litigation are, in fact, suits that fall within the HPL coverage part. Suits that consist of HPL claims or mixed *claims* would clearly fall under the HPL coverage and coverage limits. But *suits* that are, or might be, 'mixed' are not clearly

governed by the Special Endorsement" (doc. # 264, at 8). He reaffirmed his earlier ruling that if a suit contains claims that "even possibly" implicate only GL coverage, then Travelers has a GL duty to defend against those claims, and the Special Endorsement added nothing to that analysis.

In seeking reconsideration, Travelers also raised the question whether the underlying suits triggered a duty to defend under the HPL coverage (which was not answered in the earlier ruling, because that ruling concerned only the GL coverage). In response, Judge Kravitz ruled that they did (*id.* at 5). He had not previously ruled that Travelers had dual duties to defend, and in light of that ruling, he ordered the parties to submit simultaneous briefs on the proper allocation of defense costs arising from mixed cases in which Travelers has both HPL and GL duties to defend (*id.*). The parties submitted their briefs on the question, and I heard their oral arguments, at which time they raised two additional disputed issues: the practical effect of the "exhaustion" requirement under PEIC's excess coverage; and whether the nature of the sexual misconduct alleged in the underlying litigation puts that litigation beyond the scope of HPL coverage. PEIC requested the opportunity to submit short supplemental briefs on those questions, and I granted the parties leave to do so if they wished.

## II. The Requested Relief and the Effect of Judge Kravitz's Rulings

PEIC's complaint makes four specific requests for declaratory judgment, denominated *a* through *d*, and requests no other form of relief. Those requests are as follows:

> a. On Count I, that this Court determine and declare that the Reardon Litigation against Saint Francis Hospital does not implicate Hospital Professional Liability Coverage because the litigation seeks to recover for injuries resulting from sexual misconduct, and not for injury sustained as the result of medical treatment or medical incident.
>
> b. On Count II, that this Court determine and declare that Saint Francis Hospital's alleged failure to supervise its employee, who perpetrated sexual misconduct, and Saint Francis Hospital's

7

> alleged failure to prevent its employee from perpetrating sexual misconduct, implicates General Liability Coverage.
>
> c. On Count II, that this Court determine and declare that PEIC has no duty to indemnify Saint Francis Hospital for damages or settlements reached in the Reardon Litigation unless and until all applicable General Liability Coverage under the Travelers policies and the Evanston policy is properly exhausted.
>
> d. On Count III, that this Court determine and declare that the Insurer Defendants owe a duty to defend Saint Francis Hospital under their respective general liability policies because the allegations are potentially within that coverage.

Am. Compl. (doc. # 8).

Request *d* has clearly been resolved—it was an express holding of Judge Kravitz's first ruling and re-emphasized in his second ruling that the underlying litigation does trigger a duty to defend under the GL coverage part. It is of course significant that Judge Kravitz ruled that there is a GL duty to defend with respect to all *claims* (not all *suits*) that "even possibly" implicate GL coverage alone, and the language of request *d* is ambiguous on that point. Resolving that ambiguity consistently with Judge Kravitz's rulings, however, resolves request *d*.

Request *c* was not addressed in either of Judge Kravitz's rulings, but it was raised and argued in the briefing and oral argument that followed his second ruling, and I will therefore take it up below.

The effect of Judge Kravitz's rulings on requests *a* and *b* is less obvious. Judge Kravitz denied the defendants' motions for summary judgment and in effect declined to rule expressly and with finality on requests *a* and *b*, because he did not know "what facts the remaining plaintiffs will seek to prove at trial, which theories of liability they will pursue, and which the eventual juries might find convincing" (doc. # 226 at 17). He did, however, look to the underlying Uniform Complaint and concluded that "[o]n several of the theories of liability that the underlying plaintiffs might assert and a jury may or may not credit, the plaintiffs would be

8

alleging injuries that arise out of professional services" (*id.* at 16). That conclusion at least implies a rejection of the requested declaration in request *a*, which would be that the underlying litigation as a matter of law "does not implicate" HPL coverage because of the nature of the alleged sexual misconduct. On the contrary, Judge Kravitz ruled that the underlying litigation could implicate HPL coverage. I will take up below the question whether sexual misconduct allegations are beyond the scope of HPL coverage, which Judge Kravitz declined to address and which the parties again raised and argued after his second ruling. Request *a* proposes an answer to that question, so addressing it will shed greater light on the disposition of that request.

Request *b* is the complement to request *a*: what the former would declare does not implicate HPL, the latter would declare implicates GL instead. Judge Kravitz did conclude that GL coverage could be implicated, because

> [t]he facts alleged in the Uniform Complaint are not limited [to] the Hospital's supervision of treatment and research. Many of the allegations involve not just Hospital administrators and medical staff, but also security officers and other employees. . . . Given that none of these alleged facts seem to arise out of medical treatment or other professional hospital services, it is certainly possible that any one of them might implicate Travelers' GL coverage . . . .

(*Id.* at 15). That reasoning might be enough to resolve a request for a declaration that GL coverage is implicated by the underlying litigation, but not for a declaration that it is implicated—as request *b* would have it—specifically by claims of the Hospital's failure to supervise Reardon and its failure to prevent his alleged sexual misconduct. As a result of the non-concurrency provision, whether GL coverage is implicated by those claims depends at least in part on whether HPL coverage is implicated by them—as Judge Kravitz further implied with the contrast between those allegations that relate to the Hospital's supervision of treatment and research and those that do not. That question, therefore, will be addressed when I take up the sexual misconduct issue below.

9

The issue of allocation of defense costs—or of piecemeal, claim-by-claim, dollar-by-dollar allocation between HPL and GL more generally—is not raised by the complaint and none of the requests for declaratory judgment requires resolving it. Request *a*, for instance, seeks a declaration that HPL coverage is not implicated "*because* the litigation seeks to recover for injuries resulting from sexual misconduct" (emphasis added). If such litigation cannot, as a matter of law, implicate the HPL coverage, then the request must be granted; and if it can, then the request must be denied. The other requests are similarly categorical. No fact-laden inquiry into all of the particular claims that were pleaded or pursued in state court is called for by the requests for relief, and none is necessary. Such inquiry is simply beyond the scope of the complaint, and could only result in what would effectively be an advisory opinion. I will therefore take up the issues actually raised by the complaint, as described above, but will not entertain the allocation question.

### III. Exhaustion of Underlying Insurance

By the terms of PEIC's excess blanket catastrophe liability policy, PEIC has a right and duty to defend the Hospital "[i]f limits of liability of the underlying insurance are exhausted." Mot. for Partial Summ. J. Ex. J (doc. # 105-13). PEIC argues that "the underlying insurance" refers to all of the policies listed in the attached Schedule of Underlying Insurance, *id.*, and that because that list separately includes both GL and HPL, the excess policy is not triggered by merely one or the other being exhausted. The Hospital objects to that interpretation, worrying that it will be left with uncovered defense costs if costs are allocated to HPL after its HPL coverage limits have been reached, yet there remains unexhausted (but inapplicable) GL coverage.

PEIC is surely correct that all of the policies listed in the Schedule of Underlying Insurance are included in the phrase "underlying insurance," but that fact is not sufficient to establish the outcome PEIC advocates. The issue is not whether "underlying insurance" refers only to a subset of the listed policies, but whether "exhaustion" refers to exhaustion with respect to particular claims. If an HPL claim creates costs for the insured after the underlying HPL coverage is exhausted, then all underlying insurance is exhausted with respect to that claim—notwithstanding that some inapplicable underlying policy may remain unexhausted. PEIC's interpretation would effectively read the clause "if limits of liability of the underlying insurance are exhausted" to mean "if *all* limits of liability of *all* the underlying insurance are exhausted *for all claims*." That reading, which may seem reasonable enough in isolation, leads to the absurd outcome that the insured party who intends to purchase more protection by including more different kinds of underlying policies under the excess coverage actually renders the excess policy *less* valuable—potentially to the point of worthlessness—by profoundly decreasing the probability that all included policies will be exhausted. For instance, the Schedule of Underlying Insurance in this case includes—in addition to the HPL and GL coverage—Worker's Compensation, Automobile Liability, and Garage Keepers policies. It is difficult to imagine the circumstances that would exhaust everything from HPL to Garage Keepers, so, if accepted, PEIC's contention that it incurs no obligation under the excess policy to spend even a dollar toward any claim until every dollar of all of those underlying policies is exhausted would mean that PEIC sold the Hospital a virtually worthless insurance policy.[6]

---

[6] To the extent PEIC might contend that the exhaustion requirement pertains only to the duty to defend, whereas the duty to indemnify is triggered by meeting retained limits specified in the excess policy, the result would by implication contravene (without expressly contracting around) the general rule relied upon by Judge Kravitz that the duty to defend is broader than the duty to indemnify.

The more reasonable interpretation reads the clause "if limits of liability of the underlying insurance are exhausted" to mean "if limits of liability of the *applicable* underlying insurance are exhausted." PEIC's arguments to the contrary are not persuasive. It cites the "horizontal exhaustion rule," which it defines with a quotation from an insurance treatise as meaning that "all primary policies triggered by the loss must pay to their limits—that is, be exhausted—before any excess insurer will become liable." Paul E.B. Glad, et al., 3-16 APPLEMAN ON INSURANCE § 16.09[2][c][v]. But all policies "triggered by the loss" is another way of saying all *applicable* policies, and the decisions PEIC cites to show the application of the rule are consistent with such a reading.

The decision that, in PEIC's telling, seems most strongly to support its position, and which gets the most prominent treatment in its supplemental briefing, is *Cohn v. Pacific Employers Insurance Co.*, 213 Conn. 540 (1990), but PEIC misconstrues its holding. In that case, the plaintiff was severely injured in an automobile crash[7] and the damages exhausted the other party's automobile liability insurance. PEIC's excess policy—which, as PEIC says, was in relevant part identical to the policy here—was held not to apply, but not because there remained unexhausted underlying policies. Rather, it was held not to apply because "the umbrella policy did not provide underinsured motorist protection." *Id.* at 544. That policy, like this one, "*indemnif[ied] the insured* for ultimate net loss in excess of the retained limit . . . *which the Insured shall become legally obligated to pay as damages* . . . ." *Id.* at 542–43 (emphasis added by the *Cohn* Court). That language does not include losses caused by a third-party tortfeasor in excess of the third-party's insurance, and "[n]owhere [did] PEIC agree to provide uninsured or

---

[7] Or, to be more precise, the party for whose estate the plaintiff was conservator was severely injured in an automobile crash.

underinsured coverage," *id.* at 546, so the excess policy did not apply. Those circumstances are not applicable here.

PEIC's excess policies "follow form" to the primary policies, because the basic purpose of excess insurance coverage is to protect the insured against the risk of costs exceeding the limits of primary coverage. That purpose is expressed in the language of the excess policy, which "continue[s] such coverage as is afforded by such listed underlying insurance." Mot. for Partial Summ. J. Ex. J (doc. # 105-13). In order to effect that coverage, and in order to fulfill the basic purpose of the policy, PEIC's excess coverage is triggered with respect to a particular claim when all underlying coverage is exhausted with respect to that claim. Thus, if the underlying HPL coverage limits are reached, then with respect to a claim that otherwise would have been covered by that HPL coverage, the excess policy begins paying.

PEIC's request *c*, to the extent it seeks a declaration contrary to this holding,[8] is denied, and no such declaratory judgment will enter.

## IV.     Whether Sexual Abuse Is Beyond the Scope of Professional Duty to Supervise

Lastly, the parties dispute whether the underlying lawsuits properly implicate HPL coverage, or if allegations of sexual abuse are necessarily outside the scope of professional liability insurance. There is certainly not, as PEIC would have it, a bright-line exclusion, because the Connecticut Supreme Court has held that a dentist's professional liability insurance covered claims that he sexually assaulted a patient after (or while) negligently administering excessive

---

[8] In fact the language of request *c* would apparently seek a declaration only that PEIC incurs no liability until all "applicable" GL coverage is "properly" exhausted. Of course I agree that "applicable" primary coverage (or at least the retained limits purporting to describe that coverage) must be "properly" exhausted to trigger excess coverage, but that is so obviously true that a declaration to that effect would be pointless. I therefore construe request *c* to seek a declaration in the stronger terms that PEIC actually argued orally and in its briefs, as described above.

nitrous oxide. *See St. Paul Fire & Marine Ins. Co. v. Shernow*, 222 Conn. 823 (1992). In that case, the Court held that "[w]hen [a] medically negligent procedure is so inextricably intertwined and inseparable from the intentional conduct that serves as the basis for the separate claim of a sexual assault, we join with those jurisdictions that conclude that professional liability policies must, in such instances, extend coverage." *Id.* at 830. The underlying claims in this case allege that Dr. Reardon for several decades purported to conduct a child growth study under the auspices of the Hospital, and that the study was at least in large part a ruse to sexually exploit children. They do not allege that a person who happened to be a medical professional abused children on his days off, or even that he opportunistically abused his patients at the Hospital, but rather that he devised a long-term medical study to be carried out under the Hospital's imprimatur and ostensibly under its professional supervision and that a principal purpose of that study was to find and abuse his victims. The medical study and the sexual abuse could hardly be any more "inextricably intertwined."

Moreover, it is a significant distinction that the underlying disputes are not principally about direct liability for sexual abuse; they are about liability for failure to supervise a doctor who allegedly committed that abuse under the guise of a medical study. The HPL policy provides coverage for injury caused by the rendering of or failure to render professional services, expressly including "service by any person as a member of a formal accreditation or similar professional board or committee of the named insured, or as a person charged with the duty of executing directives of any such board or committee." Aff. of Maria T. Erkfitz (doc. # 130) Exs. A, C, and D. The plaintiffs in the underlying litigation alleged that the Hospital's Research Committee—comprised of physicians and charged by the Hospital's bylaws with the oversight of all medical research performed at the Hospital—negligently failed to supervise or oversee Dr.

Reardon's putative study. The Research Committee's supervision or auditing of medical research performed by a physician at the Hospital is a professional service provided by persons who are "member[s] of a formal accreditation or similar professional board or committee," and I thus cannot hold, as PEIC argues, that as a matter of law failure-to-supervise claims brought against the Hospital over alleged sexual abuse cannot fall under the Hospital's HPL coverage. I hold, rather, that claims alleging that the Research Committee or a similar body negligently supervised Reardon could be found to fall under HPL coverage (in which case GL coverage would be precluded by the non-concurrency provision). Accordingly, no judgment will enter declaring that HPL coverage as a matter of law *is not* implicated by those claims, nor that GL coverage as a matter of law *is* implicated by them.

**V.     Conclusion**

Judge Kravitz's rulings, taken together with this decision as a supplement, resolve all four of the requested declarations PEIC seeks in its complaint. On request *a*, seeking declaratory judgment that the Reardon litigation *does not implicate* HPL coverage because of the nature of the underlying claims, the requested relief is denied and no such declaratory judgment will enter. On request *b*, seeking declaratory judgment that allegations of the Hospital's alleged failure to supervise Reardon or failure to prevent his alleged sexual abuse *do implicate* GL coverage, the requested relief is denied and no such declaratory judgment will enter. On request *c*, seeking—as construed above—declaratory judgment that PEIC has no duty to indemnify or defend until all underlying coverage is exhausted with respect to all claims rather than with respect to a particular claim, the requested relief is denied and no such declaratory judgment will enter. On request *d*, seeking declaratory judgment that the underlying litigation triggers a duty to defend

under GL coverage, the requested relief is granted consistently with Judge Kravitz's ruling with respect to all *claims* (not all *suits*) that "even possibly" implicate GL coverage alone.

There being no demand for relief in the complaint that remains unresolved, the Clerk shall enter judgment and close this case.

So ordered.

Dated at Bridgeport, Connecticut, this 25th day of September 2015.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge
